Before we begin, Judge Karns and I would like to say that we're delighted to have the Honorable Lewis Kaplan just sitting with us this week. We're old friends. He has sat with us before, and so thank you for coming. We'll begin with Colburn v. Odom. Mr. Brasher. Before we begin, Mr. Brasher, are you familiar with Colburn v. Huddleston? Yes, Your Honor. I've reviewed the record. When did you become familiar with it? Sometime after the briefs were written, I suppose. No, Your Honor. We were aware of that case. We knew what that case was. Well, there's not a word about it in any of the pleadings or anything else in this case. Well, Your Honor, we— Your Honor, that case was disposed of on summary judgment. I understand. Are you familiar with the documents that were filed in that case? I'm familiar with the district court's decision in that case and this court's affirmance of the district court's decision. Well, let me—I'm going to look at one. It's an exhibit in that case, and this is three documents. And the first document—the reason I mention these is I was shocked that nobody— there's nothing said in the complaint, nothing said in your answer, nothing in the motion to dismiss, nothing in the memorandum in support of the motion to dismiss, nothing in their memorandum, and nothing in the magistrate judge's order. As a matter of fact, nothing in the briefs on appeal. And so the way we were led to—I just happened to have been on the panel that affirmed Huddleston. That's right. But other than that, what we had was people arrested, say four of them, on October the 10th and didn't have a—didn't even appear before a magistrate until a month or so later when that was not true at all. The first document—I'll take Colburn's for example. These are all forms that are promulgated by the Alabama courts. Are you familiar with those? Yes, Your Honor. Well, the first is advice of rights on initial appearance before a judge or magistrate for a felony. And it's in Colburn's case. And it cites four Alabama felony statutes that—for which Colburn was arrested for violating. Four of them. Since it was a warrantless arrest, the magistrate had to find out about these violations from somebody. So the logical inference is that Huddleston brought, say, Colburn the next day to the magistrate for an initial appearance. That's right. And Colburn signed it, and so did Magistrate Haggard. The next document is order on initial appearance, and it recites all of the advice of rights that were given to Mr. Colburn. Everything you could imagine, including the right to bail. And also the right to demand a preliminary hearing. A lot of times people are arrested without a warrant. They're caught red-handed, and they don't need a preliminary hearing, as it were. They don't want one. That's not unusual at all. But neither one of them, it's indicated, did not demand a preliminary hearing. And bail was set. Nothing about that in this complaint, nothing about it in the whole record. That's right. So the district court, if you look at— So when did the Attorney General's office wake up? Well, we knew that these were the facts of the case, but we had filed a motion to dismiss, and so we were addressing this just on— Never mentioned any of these things. That's right, because the complaint didn't mention them, and so we— Well, they were brought before a magistrate and, in effect, waived a preliminary hearing. That's right. I mean— That was not mentioned in anything. That's correct, because we had to take the complaint as the complaint alleged. I will say, if you look at page 8 of the district court's decision, the district court explains that the problem here was not that, for most of these plaintiffs, they were never brought in front of a magistrate. The problem, the alleged problem, was that, at the time, they were brought in front of the magistrate. The magistrate judge doesn't even indicate they were brought before a magistrate. Excuse me? The magistrate judge's order doesn't make any mention. The magistrate judge's order tracks the complaint, which means that nothing was done between October the 10th for four of these people. Well, if you look at page 8, this is what the district court said. It said, The plaintiffs contend that no probable cause determination was made during these initial visits. And when it's talking about the initial visits, it's talking about, it says, the informing arrestees of their rights and setting bond. So I think it is clear that the claim here is that the magistrates went over there to the jail, they saw these people, they set bond, they evaluated things like that. The allegation is just, during that process— No, somebody brought these people before the magistrate. That's right. I mean, that is in fact true. Otherwise, how would they have found out what they were charged with? That's exactly true. And as a matter of fact, the complaints that were made ultimately were on Huddleston's testimony. There wasn't a preliminary hearing. That's right. There's also no allegation that Huddleston didn't actually have probable cause to arrest these people. The only allegation here is that in the course of the magistrate going over to the jail and evaluating these things, setting bond and bail, that the magistrate didn't make the determination of probable cause, which, under Alabama rules, they should have done. But the question in front of this Court now is— Just let me interrupt you. On one of the notices, though, it indicated that Mr. Coburn had waived the right to a probable cause hearing. Is that correct? If that's so, isn't typically when a defendant waives his probable cause hearing, we assume probable cause is there. So if that's so, what's Mr. Coburn's beef? I mean, to be clear, once we get to the summary judgment, I mean, the state expects to win this case on summary judgment if we have to get there. But the issue in front of this Court now is— Counsel, these facts are undisputed. Of course, they're not in this record. That's one of the problems. They're not in this record because you didn't put them there. Well, that's my point. We haven't moved to the summary judgment stage yet. There's no question it's outside the record. But what I'm saying is they're absolutely undisputed. They're signed under oath, for heaven's sake. That's right. So either the magistrate is lying or the plaintiff is lying. That's right. But let me just clarify because a limitation or a benefit, depending on one's point of view, of my having absolutely no familiarity with Alabama procedure in a case like this is that I may ask a dumb question. Did the magistrates—and I realize it's not in the record— but did the magistrate go to the jail, as a matter of fact, or were the prisoners taken to a courthouse or something like that? Right. So the process, the procedure, at least in Walker County, is these magistrates go over to the jail, and they look and see who was arrested within the last however many hours, and then those people are brought in front of the magistrate at the jail. So they're not released from jail and taken to some other place. And at the time, I understand that there was an advice of rights that included the right to counsel. Did they, in fact, have counsel when the magistrate showed up at the jail? That would be very unusual for them to have counsel at the time the magistrate showed up at jail because the point of this is to make a probable— well, the point of this is just to basically do the initial things that you need to do when you arrest somebody. Now would it be true, at least on occasion in Alabama, that a defendant arrested without a warrant, who at the initial appearance is represented by counsel, would demand a preliminary hearing on the theory that at least the defendant gets to cross-examine the police witness free discovery? Is that a fair inference? Yeah, certainly that would be something that a defendant could demand. And so I do think the issue in front of this court right now is judicial immunity with respect to my client, Susan Odom, who's the circuit clerk. And it's our position here that with respect to that issue of judicial immunity, the district court basically— Well, of course, we're dealing with a cold record here, and none of this is in the record. And that's my point. And so what we have in this cold record is we have a complaint signed by counsel under the penalties of Rule 11 in which there's a representation that nothing was done at all between October the 10th and when the—there never was—well, the preliminary hearing, they allege, occurred in November. Well, I think it's— That's what we have. Well, I think it's unclear what's alleged in the complaint, but, I mean, with respect to that issue, the only thing that they clearly allege in the complaint is that there was not a probable cause determination. Counsel, the allegations of which you admitted is that nothing whatsoever was done. Right. Your answer—you didn't file the answer. Somebody else did. That's correct. The answer tracked the complaint, and the court's order tracks the complaint. That's right. And so all we have on this record is they arrested four of them that we know of, were arrested on October the 10th, and nothing happened to them until later. Now, there are three others that were added that weren't in the first lawsuit, Butler and two other guys. That's right. They were arrested later on—this is back in 2014—and weren't taken either. So that's what we have for a record. That's correct. So this is at the motion-to-dismiss stage. This is an interlocutory appeal, and our position is just that— So then the question becomes whether it's the magistrate's job under Alabama law to somehow or another generate a preliminary hearing, or whether that's a task of the executive branch. Now, we can take judicial notice that they did file the Huddleston lawsuit. That's a matter of record. Right. And in that lawsuit, they charged Huddleston and the sheriff with the obligation of the executive branch of bringing these people to the magistrate judge for a preliminary hearing. That's right. But I think the question really is, is it a judicial function? I've looked at every statute in Alabama and every rule having to do with magistrates, and I find nothing that says that the magistrate has to generate the probable cause hearing. That's right. You've got to have the policeman come, whoever has the evidence. Yeah, they have to be informed that there's someone that they need to hold a hearing for. But I think the real question is whether the holding the hearing and doing this of finding probable cause or not is a judicial function. And the district court rightly held that that was a judicial function, that it is a judicial function, such that the magistrates themselves are immune. And really the only question is, is the supervisor of the magistrates, my client, Ms. Odom, also immune, given that she's only being attacked for failing to supervise or manage a judicial function? And the Supreme Court's decision in Vandekamp I think quite clearly says that the way you evaluate a claim of absolute immunity, I'm sorry, a defense of absolute immunity against a claim of supervisory capacity is you look at basically two principles. You do a functional analysis of the functions that the supervisor is playing, and then in that functional analysis, you look at the functions that the supervisee is doing, right? So the subordinate is doing, right? In Vandekamp, that was a case about prosecutorial immunity, and it was an allegation that a supervisory prosecutor failed to train people, failed to supervise people, failed to manage people. Very similar to the claims here. But it was failure to train them with respect to matters that broadly fall into the category of prosecuting people, exercising prosecutorial discretion, and the like. The claim here, if there really is a claim ultimately, is a different kind of supervision. It's a supervision not in the performance of what, for the sake of my question, I'll assume is a judicial function by the magistrates of determining whether the evidence makes out a case of probable cause. It is rather supervision of the function of moving to that step of what the magistrates do. That's different from Vandekamp, isn't it? No, respectfully, Your Honor, I think you're drawing too fine a line there. The decision to hold the probable cause hearing is the same judicial function. It's also a judicial function, and here's an analogy. But the magistrates, in a case where there's not a waiver of a probable cause hearing, don't have discretion simply to elect, well, I'm not going to do a probable cause hearing for this defendant. They have the discretion, once they have the hearing, to decide it in a judicial way. Isn't that so? That is correct, but the answer of whether they have discretion or not does not address whether there's a judicial function. This court doesn't have the discretion whether or not it's going to dismiss an appeal that was filed out of time. You have to do it. But that doesn't mean that dismissing an appeal somehow is not a judicial function. And so the fact that the magistrate judge are obligated by rule to hold these hearings doesn't mean it's not a judicial function when they do it. But ultimately, I think you've got to look at the reasoning that the Supreme Court used in Vandekamp, because the reasoning that the Court used applies on all fours in this case. The Supreme Court said that basically two things in Vandekamp that led to the result there. It said, one, that supervising, training, managing a judicial function requires the same sort of legal knowledge and skill that performing the function itself would. So, for example, to know whether to hold these hearings and how to hold them and to make sure that they're being held. Well, but we're not talking about how to hold them. We're talking simply about the obligation to do it. And once again, I think that is also a judicial function, because what you're saying that the circuit clerk should have done then is to monitor these people below them and make sure that they were doing this thing that is required by the Alabama Rules of Criminal Procedure, thing that is required of them only because they're acting as a magistrate. It's the same thing that this court would do if you were supervising a district court and making sure that the district court were ruling on motions properly. Supervising the performance of a judicial function, even if it's a nondiscretionary one, is also a judicial function. The second reason that the Supreme Court said in Vanderkamp that it had to come out the way it did is it said it just doesn't make any sense that you have the subordinate have immunity to these claims, a subordinate that actually is alleged to have committed the constitutional violation, at the same time you have a supervisor who could be potentially held liable. But I think you're, with respect, mixing apples and oranges. The subordinate has immunity for the substance of the probable cause determination. But if the law of Alabama is that there has to be a probable cause determination, absent a waiver, within a certain period of time, and if the supervisor has taken all reasonable steps to ensure that the subordinates do that, and subordinate Jones just says, not me, I'm not going to do it, or at least not in this case or not in this category of cases, there's no immunity for that, is there? Judge Joe Flatton, may I briefly respond? One of the points is that we're not talking about the law of Alabama here, we're talking about the United States Constitution. I stand corrected. And if I may respond? One other thing, the law of Alabama is that in the initial appearance, if bail is set, then the requirement for a 48-hour preliminary hearing is dissipated. I believe that is correct. Well, and bail was set in these cases. That's correct. In response to your question, Judge Kaplan, if I may respond briefly to that? And there's no argument that the bail was somehow in violation of the Eighth Amendment. I don't hear that argument. No, that's the counsel. But, of course, that's not in this record. It will be, though. Right. We will win this case on summary judgment, I fully expect. If I may respond to your point, though, Judge Kaplan, I think you're just drawing too fine a line because you could, in Vanderkamp, have said, there's a non-discretionary obligation to turn over Giglio material, right? That's not a discretionary call that someone makes. The prosecutor has to do it. And the allegation there was that the prosecutors weren't turning over Brady and Giglio material. That's not something in a prosecutorial discretion you get to decide whether to turn over that or not. No, of course. But determining what's Giglio material involves a legal judgment. Right. But that was not the claim in Vanderkamp. It was not a question of whether it was Giglio material or not. The claim was that they just never turned over the Giglio material. There was no question that it was Giglio material. And so that's – I just think you're drawing too fine a line here between discretionary and non-discretionary. Thank you, Your Honor. Ms. Ivey. Ms. Ivey, I speak for myself. The person, Mr. Carmichael, I gather, who signed the complaints in these two cases. Yes. When he filed the second one, committed – it was more than disingenuous. It was obstructing justice of my judgment. No, Your Honor. The other side should have been honest that these people were taken to a magistrate right away. And that Huddleston told the magistrate what they were charged with, and the magistrate informed them of what they were charged with, with trafficking methamphetamine and four felony counts, serious felonies. That's – One was a Class D felony and the rest are Class A felonies. So – That is – Our system can't tolerate that kind of misbehavior on the part of lawyers. Do you understand me? Your Honor, there is no misbehavior in this case, with all due respect, because – No, you should have put the facts in the complaint. Your Honor, the facts of the complaint allege that these plaintiffs were not provided a probable cause determination within 40 hours. The facts of the case – Ms. Ivey, I speak for myself. There will be sanctions filed in this case, and perhaps even from this court. So I'll let you proceed. Your Honor, what the complaint alleges and what happened is that Huddleston, the deputy sheriff, warrantlessly arrested these individuals, some at the same time, some on different occasions. Some of them are related arrests, some of them are not. He then placed them in the jail and provided a list of the statutory offense under Alabama law. As you say, Class B felony here, Class A felony here, Class C felony here. He left a list. He never – He never conferred with, on these facts, and the facts will bear this out, never conferred with the magistrates who were coming to the jail to give them any actual facts that would have allowed them to determine probable cause. What they're working off of – No, there's – What they're working off of, Your Honor, is a list of alleged offenses with nothing on which these folks could – on which the magistrates could determine probable cause. They're coming down and they're holding an initial appearance hearing. They're skipping the probable cause determination and telling these folks, you're charged with X, Y, and Z, and I'm going to set your bail in this manner. Look, I understand, counsel, that it's not in the record, and conceivably it's only by one defendant. I'm not sure. But there is at least one waiver of a probable cause hearing, is there not, as a matter of fact, historical fact? Your Honor, there's – what there is is what the initial appearance form that was signed in these cases, which is what I believe Judge Schoflat was showing. It's not in the record in this case, but they were signed in the Huddleston case. Those initial appearances are supposed to follow a neutral determination of probable cause. Well, how do you – how was – What they were doing is they were skipping – Excuse me. Excuse me. How can the signing of a statement saying, I waive a probable cause hearing, logically follow a neutral determination of probable cause? Does that make sense in some bizarre form of language that I'm not familiar with? I think that these folks were waiving rights that had already been violated and that they didn't know that they had because the magistrates were just skipping the probable cause determination because Huddleston was never providing them with the information from which they could determine probable cause. So if your probable cause determination is first base, they're over here on second base telling these folks what they're charged with in sort of a summary list fashion. And yes, they did sign and waive, but there's a difference, Judge, in a probable cause determination and a preliminary hearing. Under Alabama law, you can request a preliminary hearing within 30 days of your arrest in writing once you've hired your attorney, and that happens a good frequent bit, is once a case is actually opened and assigned a case number and you have an attorney, you file a request for a preliminary hearing at that point. And as you said, you have a chance to cross-examine the officer and engage in that meaningful discovery at that point. But at that point, these folks don't know. Let's suppose for the sake of argument that these individuals all signed that same form. Is it your position that once a case was filed, they, notwithstanding the signature on the form, retained the right to a preliminary hearing? I think our position would be, Your Honor, that for these purposes of determining this constitutional right to a prompt and neutral probable cause determination, any later preliminary hearing and whether they have waived the preliminary hearing by signing that form and whether a court of competent jurisdiction decides that that was a waiver or gives them what I would call a full-on preliminary hearing with the right of cross-examination and so forth, doesn't matter to the constitutional right at issue here, which is the prompt determination by neutral magisterial probable cause. Again, that's your position, but I'd be grateful for an answer to the question I actually asked. Did I misunderstand it, Your Honor? I apologize. Perhaps so. My question was, assume they all signed that waiver document and that cases had then been instituted against them. Would they, notwithstanding the signed waiver documents, have had a right to a probable cause determination hearing? I believe at that point any subsequent hearing would not be a probable cause hearing incident to whether they were going to be released within the 48-hour period. Would they have had such a right, a right to a hearing? And if your answer is yes, a hearing to decide what? If they had signed a waiver of a preliminary hearing, then they would not have a right to a preliminary hearing. I believe that if you waive in writing a right to a preliminary hearing, then you do not have a right to a preliminary hearing. Beyond that, how in the world would a magistrate, having advised the arrestee of all of his constitutional rights, just follow the form, reading them right down, where both parties sign the form, which means all of the rights, right to counsel, right to bail, right to preliminary hearing, all these other rights, all given to the arrestee. And the arrestee says, I don't want a probable cause hearing. And I have a difficult time understanding how a magistrate would know that that didn't matter, that the Constitution required a probable cause hearing right now anyway. I don't know, I can't conceive of a case in which the Supreme Court would say such a thing. I think that the magistrate should certainly know that the right to a probable cause determination within 48 hours is constitutionally required, has been since Gerstein, Pugh, McLaughlin, at least 20 years, required for a probable cause hearing. And you have the magistrates going down to the jail and skipping right over that determination. Counsel, this is what the magistrate said to your clients. You are entitled to be represented by an attorney. You have a right to have your own attorney and will be given time and opportunity to retain an attorney. If you are unable to afford an attorney, one will be appointed for you by the court if you qualify for such representation. It will not be necessary for you to complete an indigency questionnaire under oath in order for the court to make this determination. You have a right to talk to your attorney, family, or friends, and if necessary, reasonable means will be provided in order to enable you to do so. You have the right to remain silent on anything you may say may be used against you. Because you are charged with a felony, you are entitled to demand a preliminary hearing before a judge or magistrate to determine whether there is sufficient evidence to establish that you probably committed the offense or offenses of which you are charged. And offenses are all listed. You must make this demand within 30 days of the arrest. If a hearing is demanded, one will be conducted. And if at the conclusion of the preliminary hearing the judge finds that sufficient evidence has been shown to establish that you probably committed the offense or offenses of which you are charged, the judge will then bind you over for further action by the grand jury. And on and on and on it goes. And your clients did not waive the demand for a problem cause hearing. I have a hard time understanding how a magistrate would know that after all that transpired, the failure to hold a problem cause hearing on the spot violated the Constitution. And you haven't cited the case. Because under Alabama Rule of Criminal Procedure 4.3A3, the magistrate is required to make a probable cause determination within 48 hours and then proceed to the initial appearance. Unless they're admitted to bail. Unless the party is admitted to bail and all of them were admitted to bail. The bond was set. Your Honor, I believe it's release. It's not the setting of bail. It's the requirement for a 48-hour hearing is obviated by actual release, not the setting of bail. And part of the problem, Justice Kaplan, since you're from New York, part of the problem here is that the clerk's office had a policy and practice, and that's played in the complaint, of not creating a case number until the arresting officer provided the complaint paperwork that was alleged to support probable cause. And in these cases, sometimes months would pass before the arresting officer would submit his paperwork, and therefore there was no case number in which these folks could challenge the unduly highly set bail that was set indeed at an initial appearance. Couldn't they have filed habeas? But that's distinct from probable cause determination. Couldn't they have filed habeas? They could, Your Honor, but I don't believe that that, and some of them ultimately did, but that was a remedy that they were only able to resort to at expense of attorney's fees, filing fees, and only after the constitutional violation has occurred, Your Honor, because for a habeas, then the detention would have to be unlawful. And also, I believe that in terms of immunity, that you are drawing the line at exactly the right place, contrary to what the state is trying to say, because Vandekamp does not teach that you get absolute immunity just because you're a prosecutor or just because you have judicial immunity. The law presumes that qualified immunity is sufficient to protect people who are acting in good faith, not incompetently and not in knowing and willful violation of the law. You only apply absolute immunity when they prove, they being the state and the magistrates in this case, that it's justified for the function in question. And what I find particularly interesting is your analysis, which I think is quite correct, Your Honor, that the function that we're trying to protect is the actual in prosecutorial immunity. It's the actual strategic decision. It's the actual— And what you're really arguing is that the district court or the magistrate judge below erred in even giving qualified immunity to the magistrates, correct? You disagree with that decision, ultimately. Actually, what he said in his decision was that the fact that I am granting judicial immunity to the involved magistrates who actually went to the jail should not be an indication that I would grant qualified immunity. I forget qualified immunity. For you to succeed here, your argument would be strengthened if you could also, although it's not before us on appeal, persuade us that the grant of judicial immunity to the magistrates was an error. I assume you would believe that was erroneous. Yes, absolutely, Your Honor, and we— But assuming, as we must now, that those folks have immunity, your position becomes more difficult because now the person that is actually doing the wrong has immunity, but your argument is that the person supervising them should be held liable. Yes, Your Honor, and it does become more difficult, and you're correct. We did not, and I think even in our brief, never conceded that the involved magistrates setting the bonds were entitled to judicial immunity for several reasons, the first being they were doing it at what we viewed as outside of any jurisdiction. Well, as to the— But— Excuse me. The supervisory part, you don't have much time. The Vandekamp is a problem, I think, for you, but let me give you a hypothetical. In the federal district court system, we have a speedy trial act. People are supposed to be tried within 70 days, and so you have deputy clerks. Deputy clerks are supervised, as a practical matter, by district court judges. So if you have a deputy clerk who fails to set a trial date within 70 days, I think you would agree under this holding that that deputy clerk is a judicial function when you hold the trial, when you set it. She would get quasi-judicial immunity. But your argument would suggest, then, that the district court judge would not get immunity because that judge trained the deputy clerk and, therefore, the judge would be on the hook. Is that your position? Our position is somewhat different than that, Your Honor. On my hypothetical, the district court judge would be potentially liable as a poor supervisor of the deputy clerk? There is a training and supervision element to our claims, and I acknowledge that in the complaint. However, there is no case in Vandekamp, nor any other case, holds that an individual like, may I briefly finish, Judge, that a supervisory individual, in this particular example, Ms. Odom, there's not one case that holds that she would be immune, not just for the training and supervision aspects of it, but for sitting back, for making a policy and procedure, or sitting back and just letting it happen. But my hypothetical example, you would say that the district judge, like the supervisor here, would then be potentially, would not have qualified immunity under the hypothetical I've given you. Would not have qualified immunity? No, judicial immunity. Absolute judicial immunity is for the judicial... Yes or no. Yes or no. Does the judge have judicial immunity in my hypothetical? For merely supervising the acts of the deputy clerk and not taking any action to correct the deputy clerk's... Whatever. Whatever. Does the judge have immunity? In my view, no, Your Honor, because there is no judicial act, and you fall back on qualified immunity because there is no judicial act by that judge. All right, thank you. Thank you, Your Honor. Mr. Brasher. Yes, thank you, Your Honor. Just a few brief points in response to your question, Judge Karnes. I think that your question really goes to the heart of this issue, which is what the Supreme Court was addressing in Vanderkamp, which is the way you evaluate a defense of absolute immunity to a claim of supervisor liability is you look at the functions that are being supervised, and that's what this court needs to do. It's what the district court did not do. As to your issues, Judge Kaplan, I think the line that you're drawing between sort of activity and inactivity is just not a valid line, and it's not a valid line for three reasons. I'm sorry. You attribute to me what line? I think the line that you're suggesting in your questioning is that there's some line between holding the hearing and not holding the hearing, that you might be – it's a judicial function to hold the hearing and to make the determination of probable cause, but it might not be to not hold the hearing. No, I think you've misunderstood my point. Okay. Well, let me just address the argument. I think we have your point. Okay. Unless the court has any further questions, I don't have anything else I need to say. Thank you, Your Honor. Perryman v. Mentor.